HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER KOCAR,

Plaintiff,

v.

CITY OF VADER, CITY OF TOLEDO,
CITY OF WINLOCK,

Defendants.

CASE NO. 3:09-cv-05697 RBL

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

[Dkt. # 36]

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment [Dkt. #36]. Police responded to a drunken bar fight and chased after and Tased Plaintiff Kocar when he fled the scene refusing to comply with police commands to stop. Kocar has a fractured skull, but does not remember the night's events. He sued the three cities who sent police to the fight (but not the officer who Tased him). The cities argue that there is no evidence supporting Kocar's vicarious liability claims against them and seek summary judgment. Because the cities are correct, the Motion is GRANTED.

# I.     FACTUAL BACKGROUND.

According to Tina Riley, on September 8, 2007, Travis Growden punched Darwin Flitton in the face outside Harry's Bar in Toledo.  Riley (Flitton's girlfriend) witnessed the fight and called 911.  When officers arrived, Growden fled up the street and Riley followed.  As an officer also chased after Growden, Riley pointed to Growden as the person who had hit her boyfriend.

According to Vader Police Officer Justin Stennick, the Lewis County Communications Dispatcher advised that six to eight people were involved in a physical disturbance in Toledo. Stennick was the first to respond.  When he arrived, Stennick saw men fleeing the scene where a crowd had gathered.  Others at the scene pointed in the direction of the fleeing men, indicating that they were involved in the altercation.

Stennick identified one of the suspects, who was wearing shorts and had tattoos on his arms and back.  Stennick chased the men on foot, yelling "Stop, police," multiple times.  The suspects did not stop and eventually split up.  Stennick continued pursuing the suspect in the shorts, later identified as Plaintiff Christopher Kocar.  Stennick eventually cornered Kocar, yelled "Stop, police," and repeatedly instructed Kocar to get on the ground.  Stennick drew his Taser and instructed Kocar, "Get on the ground or you will be Tased."  Kocar seemed agitated, clenching his hands into fists, yelling erratically, cursing, and moving erratically side to side. These behaviors indicated to Stennick that Kocar was preparing to attack, and Stennick was concerned for his safety.

After repeated instructions, Kocar kneeled to the ground and then moved into a "push up" position, but he would not lay completely prone.  Winlock Police Officer Stephen Miller approached Stennick and Kocar in his patrol car.  When Kocar heard the car on the gravel, he

1   jumped up and ran away.  Stennick ran after Kocar, yelling "Stop or I will Tase you."  Kocar did

2   not comply, and Stennick Tased him.  Miller arrived to see Kocar lying on the ground.

3          As Miller and Stennick began to arrest Kocar, he started vomiting.  Stennick placed him

4   on his side to prevent choking and smelled alcohol on Kocar's breath.  Miller called for aid and

5   Kocar was transported to the emergency room, where he was treated by Dr. Paul Sunderland.

6   Dr. Sunderland noted that Kocar was extremely intoxicated and combative.  Kocar alleges that

7   he suffered two skull fractures and a subdural hematoma.  Dr. Sunderland agrees that Kocar had

8   the fractures, but he was unable to determine their cause.  Kocar does not remember the fight, the

9   pursuit, or the Tasing incident.

10         Kocar sued the cities of Toledo, Vader, and Winlock, claiming they are vicariously liable

11  for Stennick's assault, battery, and negligence.  He also claims that Stennick used excessive

12  force in violation of his Fourth Amendment rights.  He did not, however, sue Stennick

13  personally.  Instead, he asserts a *Monell* claim against the cities, arguing that their policy(ies)

14  regarding the use of a Taser, and the absence of a mutual aid agreement between the cities,

15  caused violations of his constitutional rights.  Defendants seek Summary Judgment on all claims,

16  arguing that Kocar has no evidence to support any of them.

17         In response, Kocar requested a Rule 56(d) continuance in order to obtain and file

18  admissible declarations, depositions, or other evidence in opposition to the Motion, and the Court

19  granted that request.  Kocar filed a Second Supplemental Response including witness interview

20  transcripts obtained by Kocar's investigator.  The transcripts suggest that Kocar was not the

21

22

23

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 3

1  fight's instigator, but they do not rebut[1] Stennick's testimony about what happened after he

2  arrived, and they shed no light on the cause of Kocar's injuries.

3     Kocar also submitted an expert report by Dr. Steven Mitchell.  Dr. Mitchell opines that

4  Kocar's injuries were caused by blunt force trauma to the head.  But Dr. Mitchell admits he

5  cannot opine about the cause of the injuries to a reasonable degree of medical certainty.

6                              **II.     DISCUSSION.**

7     Summary judgment is appropriate when, viewing the facts in the light most favorable to

8  the nonmoving party, there is no genuine issue of material fact which would preclude summary

9  judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to

10 summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to

11 interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for

12 trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of

13 evidence in support of the non-moving party's position is not sufficient."  *Triton Energy Corp. v.*

14 *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not

15 affect the outcome of the suit are irrelevant to the consideration of a motion for summary

16 judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words,

17 "summary judgment should be granted where the nonmoving party fails to offer evidence from

18 which a reasonable [fact finder] could return a [decision] in its favor."  *Triton Energy*, 68 F.3d at

19 1221.

20

21 _____

22 [1]  In addition to being unhelpful, Kocar's supplemental affidavits are inadmissible.  The
   witnesses have not sworn that the transcripts of their interviews are accurate.  It is not enough to
23 have Kocar's attorney's secretary swear that the transcripts are true and accurate.

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 4

1      The cities argue that Stennick's use of the Taser was reasonable as a matter of law and

2  that there is no evidence supporting Kocar's claim that Stennick fractured his skull.  The cities

3  emphasize that they cannot be vicariously liable in the absence of underlying assault or battery,

4  and that there is no vicarious liability under § 1983.  The cities also argue that Kocar's *Monell*

5  claim fails as a matter of law.

6      Kocar argues that no mutual aid agreement, explicit or implied, existed between the three

7  cities, and that the absence of such an agreement renders Stennick's actions unlawful because he

8  should not have even responded to the 911 call.  Kocar also argues that because Dr. Mitchell

9  opines that the skull fractures were consistent with blunt force trauma, Stennick must have

10  kicked or hit him in the head while he was on the ground, and that doing so was excessive and a

11  violation of his Fourth Amendment rights.  Finally, Kocar argues that the cities are vicariously

12  liable for Stennick's negligence in using excessive force to arrest him, and that the cities were

13  generally negligent in hiring and training their officers.

14      **A.  Assault and Battery.**

15      Kocar alleges that Stennick intentionally used excessive and unlawful force by Tasing

16  him for no reason (he claims he was not involved in the bar fight, but does not deny fleeing the

17  scene).  Kocar further alleges that his fractured skull and subdural hematoma must have resulted

18  from Stennick hitting him, not from falling after being Tased.  Kocar claims that the three cities

19  are liable for Stennick's actions because Stennick acted within the city of Toledo, Vader hired

20  Stennick, and Winlock officers had also responded to the 911 call.  Defendants argue that the

21  Tasing did not amount to assault and battery as a matter of law.

22

23

24

1    Washington law clearly provides that if a defendant flees or forcibly resists arrest, an

2    officer may use all necessary force to effect the arrest, including Tasing the defendant.  *See* RCW

3    10.31.050.

4    Kocar's claims for assault and battery based on the Tasing itself fail as a matter of law

5    because Kocar has not submitted evidence that the Taser deployment, or any other action by any

6    officer, was unreasonable.  Kocar does not (and cannot) dispute that he fled the scene and

7    refused to comply with Stennick's commands.

8    Kocar's claims for assault and battery based on his claim that Stennick "must have" done

9    something to fracture his skull fail as a matter of law because there is literally no evidence to

10   support them.  He does not claim that Stennick hit or kicked him; his medical expert does not

11   (and cannot) claim that the injuries were caused by Stennick; and even the inadmissible witness

12   interviews do not claim that Stennick did anything to Kocar except chase him and Tase him.

13   Because Stennick's actions did not amount to assault and battery as a matter of law, the

14   cities cannot be vicariously liable for such torts as a matter of law.  Defendants' Motion for

15   Summary Judgment on Kocar's assault and battery claims is GRANTED and those claims are

16   DISMISSED WITH PREJUDICE.

17   **B.  Negligence.**

18   The cities argue that Kocar cannot establish that the officer or the cities acted negligently.

19   They also argue that there is no evidence supporting Kocar's claim that the hiring or training of

20   any officer or supervisor proximately caused Kocar's injuries.

21   Kocar argues that Stennick violated his duty to Kocar to "detain him lawfully and only

22   with reasonable force."  Resp. Mot. for Summ. J. at 16 [Dkt. # 42].  Kocar also alleges that the

23   cities breached their duty to Kocar by "employing officers who used excessive force and were,

24

1  apparently, not trained to use only a proper amount of force and avoid injuring the Plaintiff."

2  Compl. at 3 [Dkt. # 1].

3      To maintain an action for negligence under Washington law, "a plaintiff must show (1)

4  that the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3)

5  the plaintiff was injured, and (4) the defendant's breach was the proximate cause of the injury."

6  *Doty-Fielding v. Town of South Prairie*, 143 Wn. App. 559, 563 (2008).

7      Stennick was not negligent in Tasing Kocar because he had a duty to stop Kocar from

8  running away.  *See* RCW 10.31.050. Put another way, Kocar has not established that Stennick

9  had a duty not to chase or Tase him.  Kocar admittedly ran away from Stennick, while Stennick

10  was trying to arrest him as a suspect in a bar brawl.  Because Stennick was not negligent in

11  deploying his Taser as a matter of law, the cities cannot be vicariously liable for negligence, as a

12  matter of law.

13      Kocar's claim that the cities were themselves negligent in employing and/or deploying

14  Stennick and his Taser are wholly without factual or legal support.   Defendants' Motion for

15  Summary Judgment on Kocar's negligence claims against the cities is GRANTED and those

16  claims are DISMISSED WITH PREJUDICE.

17      **C.  *Monell* Claim.**

18      Kocar brings a *Monell* claim under 42 U.S.C. § 1983, arguing that the cities violated his

19  constitutional rights.  Defendants argue that there is no evidence supporting a *Monell* claim,

20  because the cities cannot be vicariously liable for assault, battery, and negligence, and no

21  evidence exists to show that any of the cities or Stennick caused a violation of Kocar's

22

23

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 7

1  constitutional rights.  Kocar alleges that the mutual aid agreement,[2] explicit or implied, caused a

2  violation of his constitutional rights, as well as the use of force policy.

3       It is well settled that a "municipality cannot be held liable under § 1983 on a respondeat

4  superior theory."  *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, any

5  claim that the cities are liable for Stennick's alleged use of excessive force is not viable as a

6  matter of law.

7       Municipalities can be held liable, however, if either a policy or custom leads to the

8  violation of the constitutional right.  *Id.* at 690–91.  Kocar must "allege that the action inflicting

9  injury flowed from either an explicitly adopted or a tacitly authorized city policy."  *Gibson v.*

10  *United States*, 781 F.2d 1334, 1337 (9th Cir. 1986).  Additionally, Kocar must show that

11  "through [the municipality's] *deliberate* conduct, [it] was the 'moving force' behind the injury

12  alleged."  *Bd. of the Cnty. Comm'rs  v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).

13  Further, when a plaintiff tries to use a single incident to demonstrate municipal liability, that

14  liability attaches "only when the decisionmaker possesses 'final authority' to establish municipal

15  policy with respect to the action ordered."  *Collins v. City of San Diego*, 841 F.2d 337, 341 (9th

16  Cir. 1988) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  The court in *Monell*

17  and *Pembaur* envisioned that acts to which liability would attach would be those taken by

18  officials whose "edicts may fairly be said to represent official policy."  *Collins*, 841 F.2d at 341

19  (quoting *Pembaur*, 475 U.S. at 480)).

20       Kocar has not established that the use of the Taser was excessive.  His *Monell* claim is

21  instead based on the convoluted argument that because the cities did not have a "mutual aid

22  ────────────────

23  [2] A mutual aid agreement authorizes shared police duties where officers from other jurisdictions
    can assist other jurisdictions' officers. based on a request to respond for aid.  Washington

24  enacted a statute that authorizes these agency assists as well.  *See* RCW 10.93 et seq.

1   agreement" (governing the circumstances in which officers from one of these small jurisdictions

2   would respond to calls in another), Stennick should not have even responded to the call in the

3   first place.  Thus, he argues, he should not have been in a position to chase and Tase the fleeing

4   suspect, Kocar.

5          But Kocar has not provided any evidence even suggesting that the mutual aid agreement

6   (or lack of one) caused a violation of his constitutional rights.  Kocar's Complaint alleged that an

7   inter-local aid agreement resulted in a violation of his constitutional rights.  However, in his

8   Response, he argues that no such agreement existed, and that Stennick should not have

9   responded to the 911 call at all.  In truth, the existence or absence of a mutual aid agreement does

10  not matter, because Washington specifically allows agencies to assist one another in these

11  circumstances.  *See* RCW 10.93.070(2) ("In addition to any other powers vested by law, [an

12  officer] may enforce the traffic or criminal laws . . .  throughout [this state], under the following

13  enumerated circumstances: . . . (2) in response to an emergency involving an immediate threat to

14  human life or property.")

15         Kocar has not demonstrated that Stennick or the cities failed to comply with that statute,

16  or that anything about the statute or the cities' conduct amounted to a constitutional violation.

17  Kocar certainly has not established that a Toledo officer responding in his own city would have

18  responded any differently.

19         Even viewed in the light most favorable to Kocar, Stennick's Taser use was reasonable

20  under the circumstances. Indeed, it was authorized by Washington statute.  *See* RCW

21  9A.16.020(1) ("The use, attempt, or offer to use force upon or toward the person of another is

22  not unlawful in the following cases: (1) Whenever necessarily used by a public officer in the

23

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 9

1   performance of a legal duty, or a person assisting the officer and acting under the officer's

2   direction.").

3           Kocar has not met his burden of demonstrating that a constitutional violation occurred, at

4   all, much less that it was caused by any city's policy or custom.

5           The Ninth Circuit has long held that mere negligence in training or supervision does not

6   give rise to a *Monell* claim. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989).

7   *See Monell*, 436 U.S. 658. Kocar has not even established negligence, and to establish a

8   constitutional violation he must demonstrate something more. There are no issues of fact about

9   the cause of Kocar's injuries. Defendants' Motion as to Kocar's *Monell* claim is GRANTED and

10  that claim is DISMISSED WITH PREJUDICE.

11                                              ***

12          Defendants' Motion for Summary Judgment is **GRANTED** and Kocar's claims are

13  DISMISSED WITH PREJUDICE.

14          IT IS SO ORDERED.

15          Dated this 23rd day of July, 2012.

16

17          _____
            Ronald B. Leighton
18          United States District Judge

19

20

21

22

23

24