HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER KOCAR,

    Plaintiff,

  v.

CITY OF VADER, CITY OF TOLEDO, CITY OF WINLOCK,

    Defendants.

CASE NO. 3:09-cv-05697 RBL

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

[Dkt. # 36]

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment [Dkt. #36]. Police responded to a drunken bar fight and chased after and Tased Plaintiff Kocar when he fled the scene refusing to comply with police commands to stop. Kocar has a fractured skull, but does not remember the night's events. He sued the three cities who sent police to the fight (but not the officer who Tased him). The cities argue that there is no evidence supporting Kocar's vicarious liability claims against them and seek summary judgment. Because the cities are correct, the Motion is GRANTED.

## I.     FACTUAL BACKGROUND.

According to Tina Riley, on September 8, 2007, Travis Growden punched Darwin Flitton in the face outside Harry's Bar in Toledo. Riley (Flitton's girlfriend) witnessed the fight and called 911. When officers arrived, Growden fled up the street and Riley followed. As an officer also chased after Growden, Riley pointed to Growden as the person who had hit her boyfriend.

According to Vader Police Officer Justin Stennick, the Lewis County Communications Dispatcher advised that six to eight people were involved in a physical disturbance in Toledo. Stennick was the first to respond. When he arrived, Stennick saw men fleeing the scene where a crowd had gathered. Others at the scene pointed in the direction of the fleeing men, indicating that they were involved in the altercation.

Stennick identified one of the suspects, who was wearing shorts and had tattoos on his arms and back. Stennick chased the men on foot, yelling "Stop, police," multiple times. The suspects did not stop and eventually split up. Stennick continued pursuing the suspect in the shorts, later identified as Plaintiff Christopher Kocar. Stennick eventually cornered Kocar, yelled "Stop, police," and repeatedly instructed Kocar to get on the ground. Stennick drew his Taser and instructed Kocar, "Get on the ground or you will be Tased." Kocar seemed agitated, clenching his hands into fists, yelling erratically, cursing, and moving erratically side to side. These behaviors indicated to Stennick that Kocar was preparing to attack, and Stennick was concerned for his safety.

After repeated instructions, Kocar kneeled to the ground and then moved into a "push up" position, but he would not lay completely prone. Winlock Police Officer Stephen Miller approached Stennick and Kocar in his patrol car. When Kocar heard the car on the gravel, he

jumped up and ran away. Stennick ran after Kocar, yelling "Stop or I will Tase you." Kocar did not comply, and Stennick Tased him. Miller arrived to see Kocar lying on the ground.

As Miller and Stennick began to arrest Kocar, he started vomiting. Stennick placed him on his side to prevent choking and smelled alcohol on Kocar's breath. Miller called for aid and Kocar was transported to the emergency room, where he was treated by Dr. Paul Sunderland. Dr. Sunderland noted that Kocar was extremely intoxicated and combative. Kocar alleges that he suffered two skull fractures and a subdural hematoma. Dr. Sunderland agrees that Kocar had the fractures, but he was unable to determine their cause. Kocar does not remember the fight, the pursuit, or the Tasing incident.

Kocar sued the cities of Toledo, Vader, and Winlock, claiming they are vicariously liable for Stennick's assault, battery, and negligence. He also claims that Stennick used excessive force in violation of his Fourth Amendment rights. He did not, however, sue Stennick personally. Instead, he asserts a *Monell* claim against the cities, arguing that their policy(ies) regarding the use of a Taser, and the absence of a mutual aid agreement between the cities, caused violations of his constitutional rights. Defendants seek Summary Judgment on all claims, arguing that Kocar has no evidence to support any of them.

In response, Kocar requested a Rule 56(d) continuance in order to obtain and file admissible declarations, depositions, or other evidence in opposition to the Motion, and the Court granted that request. Kocar filed a Second Supplemental Response including witness interview transcripts obtained by Kocar's investigator. The transcripts suggest that Kocar was not the

fight's instigator, but they do not rebut[1] Stennick's testimony about what happened after he arrived, and they shed no light on the cause of Kocar's injuries.

Kocar also submitted an expert report by Dr. Steven Mitchell. Dr. Mitchell opines that Kocar's injuries were caused by blunt force trauma to the head. But Dr. Mitchell admits he cannot opine about the cause of the injuries to a reasonable degree of medical certainty.

## II.  DISCUSSION.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1221.

---

[1] In addition to being unhelpful, Kocar's supplemental affidavits are inadmissible. The witnesses have not sworn that the transcripts of their interviews are accurate. It is not enough to have Kocar's attorney's secretary swear that the transcripts are true and accurate.

The cities argue that Stennick's use of the Taser was reasonable as a matter of law and that there is no evidence supporting Kocar's claim that Stennick fractured his skull. The cities emphasize that they cannot be vicariously liable in the absence of underlying assault or battery, and that there is no vicarious liability under § 1983. The cities also argue that Kocar's *Monell* claim fails as a matter of law.

Kocar argues that no mutual aid agreement, explicit or implied, existed between the three cities, and that the absence of such an agreement renders Stennick's actions unlawful because he should not have even responded to the 911 call. Kocar also argues that because Dr. Mitchell opines that the skull fractures were consistent with blunt force trauma, Stennick must have kicked or hit him in the head while he was on the ground, and that doing so was excessive and a violation of his Fourth Amendment rights. Finally, Kocar argues that the cities are vicariously liable for Stennick's negligence in using excessive force to arrest him, and that the cities were generally negligent in hiring and training their officers.

**A. Assault and Battery.**

Kocar alleges that Stennick intentionally used excessive and unlawful force by Tasing him for no reason (he claims he was not involved in the bar fight, but does not deny fleeing the scene). Kocar further alleges that his fractured skull and subdural hematoma must have resulted from Stennick hitting him, not from falling after being Tased. Kocar claims that the three cities are liable for Stennick's actions because Stennick acted within the city of Toledo, Vader hired Stennick, and Winlock officers had also responded to the 911 call. Defendants argue that the Tasing did not amount to assault and battery as a matter of law.

Washington law clearly provides that if a defendant flees or forcibly resists arrest, an officer may use all necessary force to effect the arrest, including Tasing the defendant. *See* RCW 10.31.050.

Kocar's claims for assault and battery based on the Tasing itself fail as a matter of law because Kocar has not submitted evidence that the Taser deployment, or any other action by any officer, was unreasonable. Kocar does not (and cannot) dispute that he fled the scene and refused to comply with Stennick's commands.

Kocar's claims for assault and battery based on his claim that Stennick "must have" done something to fracture his skull fail as a matter of law because there is literally no evidence to support them. He does not claim that Stennick hit or kicked him; his medical expert does not (and cannot) claim that the injuries were caused by Stennick; and even the inadmissible witness interviews do not claim that Stennick did anything to Kocar except chase him and Tase him.

Because Stennick's actions did not amount to assault and battery as a matter of law, the cities cannot be vicariously liable for such torts as a matter of law. Defendants' Motion for Summary Judgment on Kocar's assault and battery claims is GRANTED and those claims are DISMISSED WITH PREJUDICE.

**B. Negligence.**

The cities argue that Kocar cannot establish that the officer or the cities acted negligently. They also argue that there is no evidence supporting Kocar's claim that the hiring or training of any officer or supervisor proximately caused Kocar's injuries.

Kocar argues that Stennick violated his duty to Kocar to "detain him lawfully and only with reasonable force." Resp. Mot. for Summ. J. at 16 [Dkt. # 42]. Kocar also alleges that the cities breached their duty to Kocar by "employing officers who used excessive force and were,

apparently, not trained to use only a proper amount of force and avoid injuring the Plaintiff." Compl. at 3 [Dkt. # 1].

To maintain an action for negligence under Washington law, "a plaintiff must show (1) that the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the plaintiff was injured, and (4) the defendant's breach was the proximate cause of the injury." *Doty-Fielding v. Town of South Prairie*, 143 Wn. App. 559, 563 (2008).

Stennick was not negligent in Tasing Kocar because he had a duty to stop Kocar from running away. *See* RCW 10.31.050. Put another way, Kocar has not established that Stennick had a duty not to chase or Tase him. Kocar admittedly ran away from Stennick, while Stennick was trying to arrest him as a suspect in a bar brawl. Because Stennick was not negligent in deploying his Taser as a matter of law, the cities cannot be vicariously liable for negligence, as a matter of law.

Kocar's claim that the cities were themselves negligent in employing and/or deploying Stennick and his Taser are wholly without factual or legal support. Defendants' Motion for Summary Judgment on Kocar's negligence claims against the cities is GRANTED and those claims are DISMISSED WITH PREJUDICE.

***C. Monell* Claim.**

Kocar brings a *Monell* claim under 42 U.S.C. § 1983, arguing that the cities violated his constitutional rights. Defendants argue that there is no evidence supporting a *Monell* claim, because the cities cannot be vicariously liable for assault, battery, and negligence, and no evidence exists to show that any of the cities or Stennick caused a violation of Kocar's

constitutional rights. Kocar alleges that the mutual aid agreement,[2] explicit or implied, caused a violation of his constitutional rights, as well as the use of force policy.

It is well settled that a "municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, any claim that the cities are liable for Stennick's alleged use of excessive force is not viable as a matter of law.

Municipalities can be held liable, however, if either a policy or custom leads to the violation of the constitutional right. *Id.* at 690–91. Kocar must "allege that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized city policy." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986). Additionally, Kocar must show that "through [the municipality's] *deliberate* conduct, [it] was the 'moving force' behind the injury alleged." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). Further, when a plaintiff tries to use a single incident to demonstrate municipal liability, that liability attaches "only when the decisionmaker possesses 'final authority' to establish municipal policy with respect to the action ordered." *Collins v. City of San Diego*, 841 F.2d 337, 341 (9th Cir. 1988) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). The court in *Monell* and *Pembaur* envisioned that acts to which liability would attach would be those taken by officials whose "edicts may fairly be said to represent official policy." *Collins*, 841 F.2d at 341 (quoting *Pembaur*, 475 U.S. at 480)).

Kocar has not established that the use of the Taser was excessive. His *Monell* claim is instead based on the convoluted argument that because the cities did not have a "mutual aid

---

[2] A mutual aid agreement authorizes shared police duties where officers from other jurisdictions can assist other jurisdictions' officers. based on a request to respond for aid. Washington enacted a statute that authorizes these agency assists as well. *See* RCW 10.93 et seq.

agreement" (governing the circumstances in which officers from one of these small jurisdictions would respond to calls in another), Stennick should not have even responded to the call in the first place. Thus, he argues, he should not have been in a position to chase and Tase the fleeing suspect, Kocar.

But Kocar has not provided any evidence even suggesting that the mutual aid agreement (or lack of one) caused a violation of his constitutional rights. Kocar's Complaint alleged that an inter-local aid agreement resulted in a violation of his constitutional rights. However, in his Response, he argues that no such agreement existed, and that Stennick should not have responded to the 911 call at all. In truth, the existence or absence of a mutual aid agreement does not matter, because Washington specifically allows agencies to assist one another in these circumstances. *See* RCW 10.93.070(2) ("In addition to any other powers vested by law, [an officer] may enforce the traffic or criminal laws . . . throughout [this state], under the following enumerated circumstances: . . . (2) in response to an emergency involving an immediate threat to human life or property.")

Kocar has not demonstrated that Stennick or the cities failed to comply with that statute, or that anything about the statute or the cities' conduct amounted to a constitutional violation. Kocar certainly has not established that a Toledo officer responding in his own city would have responded any differently.

Even viewed in the light most favorable to Kocar, Stennick's Taser use was reasonable under the circumstances. Indeed, it was authorized by Washington statute. *See* RCW 9A.16.020(1) ("The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases: (1) Whenever necessarily used by a public officer in the

performance of a legal duty, or a person assisting the officer and acting under the officer's direction.”).

Kocar has not met his burden of demonstrating that a constitutional violation occurred, at all, much less that it was caused by any city’s policy or custom.

The Ninth Circuit has long held that mere negligence in training or supervision does not give rise to a *Monell* claim. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). *See Monell*, 436 U.S. 658. Kocar has not even established negligence, and to establish a constitutional violation he must demonstrate something more. There are no issues of fact about the cause of Kocar’s injuries. Defendants’ Motion as to Kocar’s *Monell* claim is GRANTED and that claim is DISMISSED WITH PREJUDICE.

***

Defendants’ Motion for Summary Judgment is **GRANTED** and Kocar’s claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated this 23rd day of July, 2012.

Ronald B. Leighton
United States District Judge